UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CURTIS GIBSON,                                          :
                                                        :
             Petitioner,                :     **OPINION AND ORDER**
                                                        :     **DENYING PETITION FOR**
      -against-                              :     **WRIT OF HABEAS CORPUS**
                                                        :
WILLIAM E. PHILLIPS,                                    :     05 Civ. 3739 (AKH)
                                                        :
             Respondent.                :
--------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

       Curtis Gibson, proceeding pro se, petitions for habeas corpus relief pursuant to Section 2254, Title 28, United States Code. He seeks review of his conviction of second degree murder in connection with a robbery of a Radio Shack store on November 19, 1992. This petition presents essentially two questions, of which the second is not entirely settled: (1) whether the confession of another, leading to a conviction later invalidated, constitutes exculpatory evidence in petitioner's trial such that the trial judge committed constitutional error in not admitting it into evidence; and (2) whether the admission into evidence of petitioner's statement to the police, in a jailhouse interview of petitioner prior to giving him a Miranda warning, constituted constitutional error.

       For the reasons stated below, I hold that petitioner's constitutional rights were not violated, and I order his petition dismissed. However, because petitioner's case raises an issue not specifically addressed by decisions of the United States Supreme Court, I grant a certificate of appealability as to that issue only (the second issue above), permitting petitioner to file an appeal so limited to the Court of Appeals for the Second Circuit.

1

## I. BACKGROUND

*A. The Robbery*

Three men armed with guns, later identified as petitioner, Robert Rolland, and James "Kendo" Davis, entered a Radio Shack store in Bowling Green, Manhattan, just before the 6:00 p.m. closing time on the evening of November 19, 1992. The men had visited the store several times in the prior week. Upon entering, Davis asked a clerk for a present for his daughter. When Davis was handed a toy car to examine, petitioner announced, "[A]lright mother fucker you all know what this is, now march into the back." Rolland herded the customers and staff into the rear of the store, while petitioner struggled with the store manager near the front counter. Retired Police Sergeant James O'Sullivan happened to be in the Radio Shack at the time and attempted to intervene, announcing "Stop, police," and drawing his gun. As Davis exchanged gunshots with O'Sullivan, one of Davis' rounds hit petitioner in the arm. Davis and petitioner then fled the store as Rolland fired at O'Sullivan. Petitioner reached a nearby subway station, but decided to go back for Rolland. When he returned, Rolland was standing over the prone (but still living) O'Sullivan. Rolland said to petitioner, "See what you made me do?" and then shot O'Sullivan four to five times in the head. Rolland handed petitioner his gun, and petitioner shot O'Sullivan once in the head because of his "bond" with Rolland. After taking the subway home, petitioner went to the hospital for treatment of his gunshot wound. He made up a story that he was the victim of a drive-by shooting outside his residence at the Wycoff housing project in Brooklyn, New York to explain his injury.

*B. The Investigation*

The Radio Shack robbery and O'Sullivan's murder remained unsolved for several years. Some time later, Anthony Moore, in an attempt to curry favor with the police following

an unrelated arrest, claimed that Marvin Brown and three others, identified only as "Abdul," "Brett," and "Jonathan," robbed the store. When pressed, Moore told police that he knew of the robbery because he had acted as a lookout. The store manager had told police that there were four robbers inside the store. An eyewitness identified Moore as having been outside of the Radio Shack at the time. Moore was indicted on December 30, 1994 and later convicted of second degree murder. Brown was indicted on the same charge on December 18, 1995. Two eyewitnesses from inside the Radio Shack identified Brown as having participated in the robbery, and a witness from outside the Radio Shack also identified Brown.

In April 1996, after Moore's sentence was imposed and while Brown remained under indictment, New York State inmate Sean Almond, a.k.a. Michael Williams, wrote to the Office of the District Attorney for Manhattan, informing the District Attorney that the petitioner, Curtis Gibson, while sharing a cell with Almond, had told Almond that he, Gibson, had participated in the Radio Shack robbery. More than a year later, on July 21, 1997, after Almond and petitioner had been moved to separate prisons, the government arranged for Almond to be placed again in the same prison as petitioner. Almond recorded a conversation with petitioner using a recording device given to him by the police. In that conversation, petitioner retold the story of the robbery, filling in details previously unknown and stating that he, Rolland, and Davis were responsible for that robbery.

Almond also recorded petitioner's incriminating statements about other crimes, including a robbery in which he shared the proceeds with various members of his family, and gave the recording to New York City detectives. The police subsequently determined that a fingerprint found on a toy car inside the Radio Shack store belonged to Davis.

Detectives visited petitioner in prison on October 14, 1997, ostensibly to ask him about the drive-by shooting he had reported five years earlier. Petitioner described the incident consistently with a police report he had filed on the date of occurrence. The conversation was amicable. Petitioner agreed that, if the detectives returned, he would view photographs of possible perpetrators.

Detectives returned on October 23, 1997 and advised petitioner of his <u>Miranda</u> rights. Petitioner indicated that he understood and would answer questions, but did not sign a waiver form. Petitioner denied recognizing a photo of Rolland, who had been arrested with him in a separate incident. The police then identified themselves as homicide detectives and told petitioner that he would be arrested because evidence linked him to the Radio Shack robbery and other crimes. The detectives also told petitioner that his family members were going to be questioned and possibly arrested since they were implicated in some of his crimes. The police showed petitioner a tactical plan listing his relatives' addresses and showing the officers assigned to go to those locations. After initial denials, petitioner admitted involvement in the robbery, but denied shooting O'Sullivan. He signed a <u>Miranda</u> waiver form and sought assistance from the detectives. They offered none, and commented on the exposure of petitioner's family regarding their possible involvements. Petitioner agreed to speak, and detectives wrote down the results. Petitioner stated that he was involved in the robbery but denied shooting O'Sullivan. Several hours later, petitioner ended the interview by refusing to answer further questions. The detectives maintained a professional tone throughout. They did not touch petitioner, and neither officer carried handcuffs or a gun during the interview. Petitioner was given food and offered drink.

Detectives again spoke to petitioner in prison on November 17, 1997, after again giving him Miranda warnings and obtaining a signed waiver form and petitioner's agreement to speak without a lawyer. They questioned petitioner for an hour and a half, wrote out his statement (which he signed), and provided him with lunch. Again, the detectives did not carry guns or handcuffs and did not yell at or touch petitioner.

Based on petitioner's statements and on the District Attorney's motions, Moore's conviction was vacated and the indictment against Brown was dismissed. Petitioner, Davis, and Rolland were indicted for second degree murder in connection with the Radio Shack robbery and shooting of O'Sullivan. On June 14, 1998, James Davis pleaded guilty to murder in the second degree for his role. He admitted that he was the robber who handled the toy car and identified petitioner as the robber who struggled with the store manager. Rolland was convicted of murder in the second degree on March 30, 1999 after a jury trial. His conviction was affirmed on appeal. People v. Rolland, 728 N.Y.S.2d 138 (N.Y. App. Div. 2001). Petitioner pleaded not guilty and proceeded to trial.

*C. The Trial*

Before trial, petitioner's counsel moved to suppress the statements he made to the police. The Supreme Court ruled that the October 14, 1997 statement was admissible because Miranda warnings were not required, since the questioning was noncustodial in the absence of additional restraint beyond that of ordinary imprisonment, citing People v. Alls, 629 N.E.2d 1018 (N.Y. 1993). People v. Gibson, No. 10511/97 (N.Y. Sup. Ct. Sept. 9, 1998 ) (unpublished decision) (Cropper, J.S.C.). The October 23, 1997 statement was admitted because petitioner knowingly, intelligently, and voluntarily waived his constitutional rights after receiving proper Miranda warnings and police tactics were fair. Justice Cropper specifically noted the absence of

5

coercion, threats, or promises. She indicated that the detective's statements about arrest and the involvement of petitioner's family were true and did not overbear petitioner's freedom to choose to remain silent. The November 17, 1997 statement was admitted despite petitioner's invocation of his right to remain silent at the end of the October 23rd interview. The judge held that the lapse of time and new Miranda warning before the November 17th interview sufficed to allow renewed interrogation.

At trial, petitioner moved to admit Moore's confession and other evidence that Moore and Brown committed the crime. He argued that Chambers v. Mississippi, 410 U.S. 284 (1973), required that the evidence come in because it was exculpatory. The judge held that the evidence would confuse the jury and was insufficiently probative of innocence, and denied the motion. On December 8, 1998, the jury found petitioner guilty of murder in the second degree. On December 18, 1998, petitioner moved pro se to set aside the verdict, pursuant to section 330.30 of New York Criminal Procedural Law. He alleged the following grounds: (a) that exclusion of evidence of Moore's and Brown's culpability was improper; (b) that the recording of petitioner confessing to the crime was made illegally; and (c) that admission of his October 23, 1997 statement was improper because police coerced him into waiving his Miranda rights and questioned him despite his request for counsel, making his statement involuntary. On December 21, 1998, the motion was denied and petitioner was sentenced to twenty-five years to life imprisonment.

D. *Post-Sentencing Proceedings and Appeals*

On January 17, 2001, petitioner filed a motion pro se for the sentence to be vacated pursuant to section 440.10 of New York Criminal Procedural Law. He argued that he was entitled to a vacatur based on newly discovered evidence that the informant recorded his

6

conversation with petitioner in violation of statute, the prosecutor committed misconduct, past convictions were improperly admitted for impeachment, and trial counsel was ineffective. The motion was denied without opinion on February 22, 2001 and leave to appeal was denied on November 1, 2001.

Petitioner appealed his conviction to the Appellate Division, contending that (a) his October 27, 1997 confession was erroneously admitted; (b) the trial court never properly addressed the issue of whether his November 17, 1997 confession was sufficiently attenuated from his October 27, 1997 confession; (c) it was error to disallow petitioner to treat a police witness called by petitioner at a suppression hearing as hostile; (d) petitioner was not properly notified that the state would use statements recorded by Almond; (e) jury instructions were erroneous; (f) the court erred in refusing one of petitioner's requested jury instructions on the voluntariness of his confessions; (g) Almond's recording of his conversation with petitioner violated the 4th Amendment; (h) Almond was illegally paid for his testimony; and (i) a witness was improperly withheld from petitioner by the state. The conviction was unanimously affirmed. People v. Gibson, 764 N.Y.S.2d 354 (N.Y. App. Div. 2003). The Court of Appeals denied leave to appeal on May 19, 2004. People v. Gibson, 2 N.Y.3d 799 (N.Y. 2004).

On October 21, 2004, petitioner again moved to vacate the sentence pursuant to section 440.10 of New York Criminal Procedural Law. He argued that excluding evidence that others committed the crime violated his due process rights and that the state's failure to disclose the information to petitioner and the jury violated his due process rights. The motion was denied on March 24, 2005 and leave to appeal was denied on June 21, 2005.

Petitioner filed the instant habeas petition on July 5, 2005, alleging three grounds for relief in addition to the two mentioned above: that a July 21, 1997 recording of petitioner by

7

a jailhouse informant violated the Constitution; that the informant was paid for his cooperation with the police in violation of Section 201, Title 18, United States Code; and that trial counsel was ineffective in failing to call a witness.

## II. DISCUSSION

Petitioner claims that he is incarcerated by the State of New York in violation of his rights because it was constitutional error to (1) exclude evidence that Moore and Brown committed the crime and (2) admit his October 14, 1997 statement to police despite the absence of a Miranda waiver. For the reasons stated below, I hold these claims to be without merit.

*A. Standard of Review*

Persons in state custody resulting from a conviction in state court may petition for federal habeas corpus relief on the ground that their custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The application cannot be granted unless the petitioner has exhausted all available state court remedies, or the state remedies are absent or ineffective. Id. § 2254(b)(1). The court may deny a petition on the merits regardless of whether state remedies have been exhausted. Id. § 2254(b)(2). The court cannot grant the writ where the state court adjudicated the claim on its merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(1)-(2). A decision can be shown to be contrary to Supreme Court precedent only if the conclusion is opposite that of the Supreme Court on a question of law or was decided differently on materially identical facts. Huynh v. Bowen, 374 F.3d 546 (7th Cir. 2004), cert. denied 125 S. Ct. 1680 (2005). The court must also presume that

the state court correctly determined factual issues unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). To rebut the presumption, petitioner's evidence must show that the factual finding was not fairly supported by the record. Purkett v. Elem, 514 U.S. 765 (1995). When, as here, the petitioner proceeds pro se, the papers are to be read liberally and interpreted to raise the strongest arguments that they suggest. Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995).

*B. Petitioner's Claims for Relief*

1. Admission into Evidence of Petitioner's October 14, 1997 Statement to Police

        Petitioner claims that his October 14, 1997 statement to police, by which he repeated his false statement that his bullet wound resulted from a drive-by shooting, was erroneously admitted because the police did not advise him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) prior to obtaining the statement. Miranda requires that, before any custodial interrogation, the police advise a suspect of the rights to remain silent, to consult with counsel, and to have counsel appointed if the suspect cannot afford to hire counsel, and that any statements given can be used against the suspect in court. Id. at 471-72. The Supreme Court clarified that holding in Mathis v. United States, 391 U.S. 1 (1968), holding that the questioning of an incarcerated man by an agent of the Internal Revenue Service ("IRS") was custodial despite the fact that the man was incarcerated on charges unrelated to the questioning. In Mathis, the petitioner was questioned in the Florida State Prison by an agent of the IRS while imprisoned pursuant to a state criminal conviction. The IRS agent asked the petitioner to confirm his signature on two tax return forms, which the petitioner did. No Miranda warnings were given prior to this conversation. When the IRS later discovered that the petitioner had falsified the two tax forms, he was prosecuted. At trial, the court admitted the IRS agent's testimony about his

9

conversations in Florida State Prison with the petitioner, and refused to hold a suppression hearing on whether Miranda warnings were given before the interview. On appeal to the United States Supreme Court, the petitioner argued that his statements could not be used against him because he was in custody at the time of the interview and was never given the warnings required in Miranda for the fruits of a custodial interrogation to be admissible. The government argued that Miranda warnings were not required because the petitioner was incarcerated for an offense entirely separate from the IRS investigation. The Supreme Court, referring to Miranda's "clear and unequivocal" statement that "when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized," held that the petitioner was in custody and his statements must be suppressed since the IRS agent did not give Miranda warnings before questioning him. Mathis, 391 U.S. at 4-5.

But not every questioning of an incarcerated subject requires a Miranda warning. In Illinois v. Perkins, 496 U.S. 292 (1990), for example, an undercover agent planted in prison did not give Miranda warnings before questioning an incarcerated suspect. The Court, denying suppression, distinguished Mathis on the basis that the suspect in Mathis was aware that a government agent was questioning him, while the suspect in Perkins was not. The Perkins Court commented that "[t]he bare fact of custody may not in every instance require a warning even when the suspect is aware that he is speaking to an official, but we do not have occasion to explore that issue here." Perkins, 496 U.S. at 299.

The New York Court of Appeals, in a divided decision, carried Perkins further by holding that a suspect could be interviewed in a jail setting without a Miranda warning if there were no "added constraints" imposed on the suspect. People v. Alls, 629 N.E.2d 1018, 1021

(N.Y. 1993), cert. denied 511 U.S. 1090 (1994). In Alls, a prison inmate suspected of assaulting another was taken to a basement office by a prison guard and questioned about the incident. The prison guard did not give Miranda warnings, and admissions made by the suspect during the interview were later admitted at trial. To determine whether the interview of the suspect was custodial, the trial court articulated a standard that required a finding of "inherently coercive" pressure above and beyond the mere fact of incarceration, and, finding none, admitted the statement. The Court of Appeals rejected this standard as erroneous, stating that "the suppression court effectively converted the added imposition of restraint test into an added imposition of coercive pressures test." Alls, 629 N.E.2d at 1022. The court remanded the case for an evidentiary hearing on whether, despite the absence of an inherently coercive atmosphere, the suspect was subjected to added constraint by prison rules compelling him to obey the prison guard's orders to go to the basement with him. The court stated that the existence of such rules would create a presumption of added constraint that the government would have to overcome in order to avoid suppression of the statement. The court distinguished such an added constraint situation from the "fair, but limited, accommodation of the Miranda rules to a correctional facility environment," since a literal application of Miranda's definition of custody would require "warnings any time a correction officer asked an inmate a question" and "afford an inmate greater protection . . . than . . . his nonimprisoned counterpart." Id. (internal citations and quotations omitted).

Justice Cropper, relying on Alls, held that Miranda warnings were not required in the October 14th interview of petitioner, because he was not under any "added constraint" above and beyond that of ordinary incarceration. The court specifically noted that the police did not wear guns or handcuffs, did not accuse or accost petitioner, and provided petitioner with food

11

and drink. The atmosphere of the interview was amicable and petitioner agreed to meet with the detectives again in the future. Petitioner voluntarily participated in the interview and was not coerced in any way.

However, in the prosecution of petitioner's accomplice, Robert Rolland, the New York Supreme Court relied on <u>Alls</u> to suppress a substantially similar statement by petitioner's co-perpetrator. <u>See</u> <u>People v. Rolland</u>, 693 N.Y.S.2d 803, 806-07 (N.Y. Sup. Ct. 1999) (Figueroa, J.S.C.). Detectives visited Rolland, who was incarcerated on an unrelated charge, and questioned him about the alleged drive-by shooting of petitioner on the night of the Radio Shack robbery. <u>Id.</u> at 805. As with petitioner's October 14th statement, Rolland was questioned as a crime witness rather than as a suspect. <u>Id.</u> at 805-06. The judge noted, however, that as a prisoner Rolland was required by statute to comply when corrections officers directed him to the area where detectives questioned him. <u>Id.</u> at 807. Absent a showing by the People that Rolland was given a choice of whether or where to meet with the officers, the court determined that Rolland was in custody and suppressed the statement that he made without <u>Miranda</u> warnings. <u>Id.</u>

Petitioner and the police were cooperating in the single objective of solving petitioner's reported drive-by shooting in the October 14th interview. Petitioner had concocted the ruse of a drive-by shooting to escape being implicated in the felony-murder at the Radio Shack store. The police, purportedly to check out petitioner's story, used their own ruse of approaching petitioner to enlist his assistance to solve the drive-by shooting he had reported. Once petitioner stood by his ruse, he became a suspect and, once he became a suspect, the police gave him <u>Miranda</u> warnings. The police did nothing wrong in pursuing their inquiry this way. Police deceptions are permissible unless they threaten to compel untruthful statements from a

12

suspect. See Perkins, 496 U.S. at 297 (stating that "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns"). A Miranda warning was not feasible in the circumstances created by petitioner's ruse. Petitioner believed that he and the police shared a common purpose—finding the person that shot at petitioner. Miranda's concerns did not apply.

I hold that Justice Cropper, although her interpretation of Alls differed from that of Justice Figueroa, did not make a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1). Alls was a decision of the highest state court, not of the Supreme Court. Section 2254(d) contemplates that state courts have wide latitude in their adjudications of constitutional issues. In seeking to determine whether Miranda warnings were required for petitioner's October 14th statement, the state court relied on a reasonable interpretation of Miranda, Mathis, and Perkins, the relevant decisions of the United States Supreme Court. Justice Cropper followed Alls, the decision of the New York Court of Appeals, which held that the results of questioning an incarcerated suspect without giving Miranda warnings would be admissible under Miranda, Mathis, and Perkins unless the suspect was subjected to some added constraint above and beyond that of ordinary incarceration. It cannot be said that the interpretation of Justice Cropper was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [Miranda, Mathis, and Perkins]." The fact that Justice Figueroa reached an opposite conclusion in the case of the facts presented by petitioner's co-defendant Rolland, and that the New York Court of Appeals was divided in its decision in Alls, indicates not that one interpretation is wrong and the other right, but only that federal law regarding interviews of suspects in custody is not "clearly determined"

by Supreme Court decisions. I hold that Justice Cropper's decision to admit petitioner's October 14th statement was a reasonable interpretation of then-existing federal law, and I deny this branch of petitioner's application.

2. Due Process and the Exclusion of Evidence of Third-Party Liability

Petitioner claims that the trial court committed constitutional error by refusing to admit evidence that Moore and Brown earlier had confessed to committing the crime. According to petitioner, evidence of Moore's and Brown's confessions was exculpatory and therefore the evidence was required to be admitted under Chambers v. Mississippi, 410 U.S. 284 (1973). Petitioner's argument is without merit.

The trial judge excluded the evidence proffered by petitioner after hearing arguments from both sides, and then ruling that the evidence was inadmissible. The relevance was small, if any, and the prejudicial and digressive effects were substantial. The trial judge determined that the proffered evidence did not exculpate petitioner, was inadmissible hearsay, and would confuse the jury. Such careful weighing of evidence is precisely the way a trial judge should act. See Grochulski v. Henderson, 637 F.2d 50, 55-56 (2d Cir. 1980), cert. denied 450 U.S. 927 (1981) (distinguishing Chambers as "confined to its facts" and involving the overly "technical" suppression of a third party confession that had not been recanted).

Petitioner fails to show that the court deviated from federal law or made an unreasonable finding when it determined that the evidence of Moore's and Brown's culpability was consistent with his own guilt. Trial judges have wide latitude under the Constitution to exclude confusing evidence that is of marginal relevance. Crane v. Kentucky, 476 U.S. 683, 689-90 (1986). I hold that the trial court applied federal constitutional law reasonably in

14

excluding evidence that was of minimal, if any, relevance, and had the potential to be digressive and confusing. I deny petitioner's request for habeas relief on this claim.

3. Remaining Claims

Petitioner's remaining claims are also without merit. Petitioner claims that he was coerced into making his October 23rd and November 17th statements, but the trial court properly held that the statements were given voluntarily after valid <u>Miranda</u> waivers. Petitioner does not show that coercive police tactics overbore his free will. See <u>Lynumn v. Illinois</u>, 372 U.S. 528 (1963). Police intimations that petitioner's family might be arrested were based on fact and comprised the type of circumstances which, although possibly presenting "difficulties" to an interviewee, were found insufficient to create coercion. See <u>United States v. Mullens</u>, 536 F.2d 997 (2d Cir. 1976).

Petitioner also cannot claim constitutional protection against a fellow-inmate's decision to reveal a conversation to help himself with the police and prison authorities. Almond's recording of petitioner's July 21, 1997 conversation fits into that category. A prisoner has to risk that his conversations with other inmates may be recorded and may be provided to the police. See <u>Lopez v. United States</u>, 373 U.S. 427, 439 (1963); <u>United States v. Davis</u>, 326 F.3d 361, 365-66 (2d Cir. 2003). The wiretapping statutes cited by the petitioner are inapplicable because they relate to situations in which police tape a conversation and no participant consents. A constitutional issue may arise when an informant is impressed to help the police, but Almond's trial testimony indicates that he acted voluntarily.

The District Attorney's assistance to Almond did not violate petitioner's rights under the Constitution. The evidence that the informant was paid involves testimony that his cooperation was noted to authorities, who considered his applications favorably for conjugal

15

visits, work release, and favorable parole treatment; and that he was given cash assistance in moving his residence. The federal antibribery statute that petitioner alleges was violated by this conduct is inapplicable to state officials and inapplicable to sentencing deals with witnesses for their cooperation in a prosecution. See United States v. Randolph, 230 F.3d 243 (6th Cir. 2000) (indicating that the statute does not apply to deals for leniency); United States v. Albanese, 195 F.3d 389 (8th Cir. 1999) (indicating that the statute does not prohibit payment from prosecutor to witness when issue is presented to and explored before jury). Furthermore, the facts presented do not show bribery.

Petitioner presents no evidence that his counsel was ineffective in failing to call one witness. Petitioner merely hoped the witness would testify that she did not see him commit the robbery. Even if the failure to call the witness was erroneous, counsel did not "ma[k]e errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984).

For the reasons stated above, I hold that the petitioner's claims are without merit and deny the petition. However, as to the first point discussed, I grant a certificate of appealability, permitting petitioner to file an appeal in the Court of Appeals for the Second Circuit in regard to his claim that the trial court erred in admitting petitioner's October 14, 1997 jailhouse statement to police without a Miranda waiver in connection with his first statement relating to his claim of a drive-by shooting.

SO ORDERED.

Dated:    New York, New York
March 14, 2006

ALVIN K. HELLERSTEIN
United States District Judge